IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE<br><br>       Plaintiff,<br><br>vs.<br><br>ELWYN and ELWYN, INC.<br><br>       Defendants. | CIVIL ACTION NO.  16-cv-2894 |

Baylson, J.                                                                                                    October 24, 2016

**MEMORANDUM RE: DEFENDANTS' PARTIAL MOTION
TO DISMISS AND PLAINTIFF'S MOTION TO AMEND**

I.   **Introduction**

In this employment discrimination action, plaintiff John Doe ("Plaintiff") has sued defendant Elwyn[1] ("Defendant"), alleging various statutory violations.  The operative complaint is the Second Amended Complaint (ECF 20, "Amended Complaint" or "Compl."), which Plaintiff brings in twelve Counts:

1) Systemic disparate treatment/pattern-and-practice of discrimination, in violation of 42 U.S.C. § 1981;
2) Systemic disparate impact on the basis of race/color/national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
3) Failure to promote Plaintiff to "OD Generalist," in violation of 42 U.S.C. § 1981;
4) Failure to promote Plaintiff to "Communications Coordinator," in violation of 42 U.S.C. § 1981;
5) Failure to promote Plaintiff to "Verification Specialist," in violation of 42 U.S.C. § 1981;
6) Demotion in retaliation for, *inter alia*, Plaintiff's request for promotion, in violation of 42 U.S.C. § 1981;
7) Failure to promote Plaintiff to "Quality Improvement Specialist," in violation of 42 U.S.C. § 1981;

---

[1]     Plaintiff additionally names "Elwyn, Inc." as a defendant in this case despite Defendant's repeated representations to Plaintiff and this Court that "Elwyn, Inc." is "not a legal entity." (Def.'s Mot. at 6).  Accordingly, the Court dismisses all claims against "Elwyn, Inc."

1

8) Creating a hostile work environment by, *inter alia,* "segregating and classifying" employees, in violation of 42 U.S.C. § 1981;
9) Failure to promote Plaintiff by failing to conduct performance appraisals of him, in violation of 42 U.S.C. § 1981;
10) Individual disparate treatment for failure to conduct performance appraisals, in violation of 42 U.S.C. § 1981;
11) Retaliation, in violation of 42 U.S.C. § 1981; and
12) Systemic disparate treatment on the basis of race/color/national origin, in violation of Title VII.

On August 22, 2016, Defendant filed a motion to dismiss all but Counts Three and Four of the Amended Complaint. (ECF 21, Def.'s Mot. Dismiss "Def.'s Mot."). On September 20, 2016, Plaintiff filed an opposition to Defendant's partial motion to dismiss (ECF 27, Pl.'s Opp'n to Def.'s Mot. Dismiss "Pl.'s Opp'n"), and Defendant filed a reply on September 27, 2016 (ECF 32, Reply Br. Supp. Def.'s Mot. Dismiss "Def.'s Reply"). On September 20, 2016, Plaintiff also filed a motion for leave to amend the Amended Complaint, and attached thereto a proposed Third Amended Complaint (ECF 28, Pl.'s Mot. Amend "Pl.'s Mot."), to which Defendant filed an opposition on October 4, 2016 (ECF 34, Def.'s Mem. Opp'n to Pl.'s Mot. Amend, "Def.'s Opp'n").

For the reasons stated herein, Defendant's partial motion to dismiss will be **GRANTED** with prejudice with respect to Counts One, Two, Six, Ten, Eleven and Twelve; **GRANTED** without prejudice—because they will be subsumed into Count Three—with respect to Counts Five, Seven and Nine; and **DENIED** with respect to Count Eight. Additionally, Plaintiff's motion for leave to amend the Amended Complaint will be **DENIED**. The Court dismisses Count Four without prejudice *sua sponte*, as it is duplicative. Accordingly, this case will proceed only on Counts Three and Eight.

**II.   Factual Background**

2

Elwyn, an educational institution for children with intellectual disabilities, has campuses both nationally and throughout Pennsylvania. On June 6, 2011, Elwyn hired Plaintiff as a Data Analyst at its campus located in West Philadelphia, where Plaintiff is still employed. (Compl. ¶ 1; See ECF 21, Ex. 2 "12/30/2015 Charge," at 1). Plaintiff alleges that he, as an African-American employee, "serve[d] predominantly African-American populations" in "low level" positions on the "racially-identifiabl[y]" African-American campuses, namely "West Philadelphia, East Falls, and Chester." (Compl. ¶¶ 12, 13, 15, 18). Upon reviewing his personnel file on December 16, 2015, Plaintiff found that—despite having been employed by Elwyn for over five years—his file was devoid of any performance evaluations, in violation of Defendant's own policies and procedures regarding annual performance evaluations and promotions. (Id. ¶¶ 54-56). Plaintiff identifies white employees who, by contrast, were both consistently reviewed and promoted. (Id. ¶ 58).

Plaintiff alleges that Defendant's failure to conduct performance reviews of him contributed to multiple instances in which Elwyn unfairly failed to promote him. (See e.g., id. ¶¶ 54-58).

*First*, in or around April 2013, Plaintiff was given the responsibilities of a Verification Specialist, but was not compensated for those additional responsibilities or officially promoted to the position despite having, on several occasions between June 2014 and March 2016, conveyed to Defendant his interest in that promotion. (Id. ¶¶ 35-36). On June 21, 2016—four days after Plaintiff was issued a Notice of Right-to-Sue by the EEOC—Plaintiff was finally promoted to Verification Specialist, and told that the "change in status" "will be effective as of 2/2015." (Id. ¶ 38). Plaintiff alternatively alleges that this eventual promotion was actually a demotion, in retaliation for his repeated inquiries about a promotion to Verification Specialist. (Id. ¶ 40).

3

*Second*, beginning on March 18, 2015, Plaintiff applied for the position of "OD Generalist," "located . . . on the traditionally White/Caucasian Media Campus," through the Department Manager, a white female. (Id. ¶ 23-24). Thereafter, Plaintiff expressed interest in the position on numerous occasions, including on July 2, 2015, when he asked the Department Manager about the position. (Id. ¶¶ 23, 25). The position was ultimately filled by a white female. (Id. ¶ 26).

*Third*, on July 23, 2015, Plaintiff applied for the position of Communications Coordinator, also located on the "traditionally White/Caucasian Media Campus." (Id. ¶ 28). Plaintiff alleges he was rejected from this position by Elwyn's Chief Operating Officer, a white male, and that the position was ultimately filled by a white person. (Id. ¶ 30-31).

*Fourth*, in December 2015 and January 2016, Plaintiff alleges that he expressed his interest in promotion to the position of Quality Improvement Specialist, for which "Defendant[] did not post any job posting." (Id. ¶ 44). Plaintiff alleges he was rejected for the position by the Director of Quality Improvement, a white male, and that the position was ultimately filled by a white female. (Id. ¶ 45-46).

On November 9, 2015, Plaintiff's African-American live-in partner filed an EEOC Charge of Discrimination against Defendant on the basis of race. (Id. ¶ 66). Three weeks later, "a manager called Cigna and reported that Plaintiff's partner and Plaintiff were taking off similar FMLA days." (Id. ¶ 67). In response, a Cigna representative called Plaintiff's partner to ask if he was "really taking off to care for Plaintiff or for a true health condition." (Id. ¶ 68). When, three months later, Plaintiff requested that his hours be changed to match those of his Partner because they "cannot take off the same FMLA days," Defendant denied the request. (Id. ¶ 69).

4

In December 2015, Plaintiff also filed an EEOC Charge of Discrimination against Defendant. (See 12/30/15 Charge). After and allegedly "in response to" that EEOC Charge, Defendant posted a company-wide, internal memorandum (the "Policy") that stated, "[i]n hiring practices, Elwyn will attempt to recruit staff appropriate to the population served." (Id. ¶ 11). Plaintiff alleges that, since "African-American employees serve predominantly African-American populations . . . and White/Caucasian employees serve predominantly White/Caucasian populations," the Policy was intended to "maintain permanent racial balance." (Id. ¶ 11-12). Plaintiff alleges that Defendant perpetuated its "formal policy of racial preference" by, *inter alia*, "refus[ing] to hire or promote African-American/Black employees . . . into traditionally White/Caucasian departments/campuses/job classifications," and "operat[ing] a discriminatory posting system, *i.e.*, refusing to post or circularize vacancies for traditionally White/Caucasian positions and preventing African-American/Black employees from learning about, competing for, and being considered for promotion/transfer to traditionally White/Caucasian campuses/departments/job classifications." (Id. ¶ 11, 15-16). In March 2016, Plaintiff amended his EEOC Charge to include allegations regarding the Policy. (ECF 28, Ex. C, "3/16/16 Charge").

Plaintiff alleges that the Policy's goal of "segregating and classifying" was also furthered by making it Plaintiff's responsibility to "daily or weekly access the CMHC/MIS database, search, code, and log the 'Ethnicity/Race' of all employees [and clients] . . . in order to classify staff and clients 'appropriate to the population served.'" (Id. ¶¶ 48-49).

### III. Procedural History & Jurisdiction

Plaintiff commenced this action on May 12, 2016 in the Court of Common Pleas, Philadelphia County. On June 10, 2016, Defendant timely removed the action to this Court. (ECF 1, Notice of Removal). On August 16, 2016, the Court issued an Order (ECF 19) which:

1) denied Defendant's motion to dismiss Plaintiff's first amended complaint as moot;
2) granted Plaintiff's emergency motion to seal (ECF 13);
3) granted in part and denied in part Plaintiff's motion to use a pseudonym (ECF 14).

On October 6, 2016, Plaintiff's counsel filed an affidavit explaining that—contrary to Defendant's arguments in its opposition to Plaintiff's motion to amend—Plaintiff's claims in the proposed Third Amended Complaint based on sexual orientation and gender discriminations, pursuant to the Philadelphia Fair Practices Ordinance ("PFPO"), are not barred for failure to exhaust his administrative remedies. (ECF 37, Decl. Pl.'s Att'y). On October 11, 2016, Plaintiff's counsel filed an additional affidavit stating that the Philadelphia Commission on Human Relations ("PCHR"), the agency charged with enforcing the PFPO, officially issued Plaintiff a Notice of his right to sue on October 5, 2016. (Id. ¶ 11; ECF 39, Decl. Pl's Att'y ¶ 2).

In addition to the instant motions to dismiss and amend the Amended Complaint, there are various other motions pending before the Court, including (1) Defendant's motion to quash Plaintiff's subpoena (ECF 22); (2) three motions by Defendant for protective orders to Plaintiff's requests for production of documents and things (ECF 26, 30, 33); and (3) Defendant's Motion to Compel Plaintiff's Answers to Interrogatories and Requests for Production of Documents (ECF 40). At a hearing on October 6, 2016, the Court directed the parties to confer regarding these various discovery disputes, which resulted in their partial resolution. To date, Defendant has not withdrawn any of its pending motions.

On October 24, 2016, the Court held a hearing regarding outstanding discovery issues, which are the subject of a separate Order.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is proper pursuant to 28 U.S.C § 1441(a).

### IV.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. While all factual allegations must be accepted as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), this requirement does not apply to legal conclusions, which may be disregarded, Iqbal, 556 U.S. at 678.

When presented with a motion to dismiss under Rule 12(b)(6), a district court should conduct a two-part analysis. First, it should separate the factual and legal elements of a claim and accept all of the well-pleaded facts as true. Second, it should determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

In employment discrimination cases, the Third Circuit recently announced in Connelly v. Lane Const. Corp., that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." 809 F.3d 780, 788 (3d Cir. 2016). "A *prima facie* case is an evidentiary standard, not a pleading requirement . . . and hence is not a proper measure of whether a complaint fails to state a claim." Id. at 789 (citations and internal quotation marks omitted). A plaintiff's claims will survive a motion to dismiss if he plead "sufficient factual allegations to raise a reasonable expectation that discovery will reveal

evidence of" each of the elements of the claims. Id. While the Court outlines the *prima facie* requirements for each count, it applies this less onerous pleading standard.

V. Analysis

A. Motion to Partially Dismiss

i. Systemic Disparate Impact (Counts One, Two and Twelve)

The parties agree that Plaintiff's Amended Complaint contains no class claims. (Def.'s Mot at 6; Pl.'s Opp'n at 4). Defendant argues and Plaintiff concedes that, absent class claims, claims for "systemic disparate treatment" fail as a matter of law because "no stand-alone claim for 'pattern or practice' discrimination exists." (Def.'s Mot. at 6; Pl.'s Opp'n at 5).[2] Accordingly, Counts One, Two and Twelve of the Amended Complaint will be dismissed with prejudice.

ii. Failure to Promote (Counts Three, Four, Five, Seven and Nine)

The Amended Complaint contains five separate Counts of Failure to Promote Plaintiff to four separate positions, each in violation of 42 U.S.C. § 1981. (See Compl. at 5-8, 10). To make out a *prima facie* case for failure to promote, Plaintiff must establish (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was rejected despite being qualified; and must (4) raise an inference of discriminatory action. See Waris v. Heartland Home Healthcare Servs. Inc., 365 Fed. App'x 402, 404 (3d Cir. 2010). As an African-American male, it is not disputed that Plaintiff is a member of a protected class, and Defendant does not meaningfully dispute that Plaintiff was qualified for any of the positions he sought.

---

[2] Plaintiff argues that "in lieu" of those claims, he should be permitted to bring new claims based on, *inter alia*, "individual disparate impact," as set forth in the proposed Third Amended Complaint. (Pl.'s Opp'n at 4). As explained more fully below, *infra* V.B.i, Plaintiff's request for leave to amend the Amended Complaint will be denied.

Importantly, Defendant has not moved to dismiss two of the five Counts—failure to promote to OD Generalist and to Communications Coordinator—so it is not disputed that Plaintiff has adequately alleged a claim for failure to promote. (Compl. ¶¶ 22-26, 27-32).

Going forward, the Court will consolidate Plaintiff's allegations regarding Defendant's failure to promote him to various positions into a single cause of action, as alleged in Count Three of the Amended Complaint. Accordingly, the Court need not consider at length whether the allegations contained in each of Counts Five, Seven and Nine would be sufficient to state *independent* claims for failure to promote.[3] Plaintiff will be permitted to introduce evidence to prove each instance in which Defendant allegedly failed to promote Plaintiff, as alleged in Counts Four, Five, Seven and Nine. Accordingly, because they will be subsumed into Count Three, Counts Four, Five, Seven and Nine will be dismissed without prejudice.

### iii. Demotion (Count Six)

Count Six of the Amended Complaint alleges that Plaintiff was demoted "[i]n retaliation for Plaintiff's request for promotion and inquiry about his compensation," and that the demotion "became effective June 21, 2016," the same day that he was promoted to Verification Specialist. (Compl. ¶ 40). Defendant argues this claim is "contradictory" because Plaintiff's Amended

---

[3] Defendant's argument that Counts Five and Seven must fail because, unlike in Counts Three and Four, Plaintiff failed to formally apply to the positions of Verification Specialist and Quality Improvement Specialist is rejected. The law in the Third Circuit is clear that it is sufficient to make out a *prima facie* case for failure to promote "for a plaintiff to establish[] that the company had some reason or duty to consider him for the post. Ordinarily, this will present a minimal obstacle, consistent with the Supreme Court's statement . . . that the burden of establishing a *prima facie* case is not onerous." Fowle v. C & C Cola, 868 F.2d 59, 68 (3d Cir. 1989) (holding plaintiff failed to show that defendant "had any reason or duty to consider him for" certain positions because, *inter alia,* plaintiff "had not been in touch with those responsible for hiring . . . in over seven months") (internal citations and quotation marks omitted). With respect to Count Nine, while the Court agrees with Defendant that a generalized claim that he was not provided with performance evaluations does not independently state a claim for failure to promote, it also agrees, as Defendant itself admitted, that those allegations "may support Plaintiff's . . . other failure to promote claims." (Def. Rep. at 5-6).

Complaint "admits that he was promoted on June 21, 2016." (Def.'s Mot. at 14). Plaintiff denies that any contradiction exists, as "Plaintiff plainly identifies that he was promoted in *title/rank,* but demoted in *job grade.*" (Pl.'s Opp'n at 15 (emphasis in original)).

In order to establish a *prima facie* case for wrongful demotion, Plaintiff must show that (1) he was a member of a protected class; (2) he satisfactorily performed the duties of his position in conformity with the employer's expectations; (3) he suffered an adverse employment action (demotion); and, (4) the circumstances surrounding the adverse employment action infer discriminatory activity. Reyes v. AutoZone, Inc., 08-cv-847, 2009 WL 4559454, at *5 (W.D. Pa. Dec. 2, 2009). An adverse employment action involves activity by an employer "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (internal citations and quotation marks omitted). Lateral transfers, changes of title, and different reporting relationships, generally do not constitute adverse employment actions. See Langley v. Merck & Company, Inc., 186 F. App'x 258, 260 (3d Cir. 2006).

Plaintiff has not adequately alleged in Count Six that he suffered an adverse employment action. Plaintiff alleges throughout the Amended Complaint that he "made every reasonable effort to convey his interest in promotion to the position of Verification Specialist," and admits that he was eventually promoted to the position on June 21, 2016. (Compl. ¶¶ 36, 38). While Plaintiff now argues that the promotion in "title/rank" was actually a demotion "in job grade," Plaintiff does not allege that his job grade or salary was actually lowered in this role. (Id. ¶¶ 39-41). Accordingly, Count Six will be dismissed with prejudice.

i.  **Hostile Work Environment (Count Eight)**

Count Eight of Plaintiff's Amended Complaint alleges that Defendant created a hostile work environment. In the Third Circuit, in order to state a hostile work environment claim,

Plaintiff must show that (1) he suffered intentional discrimination because of his protected characteristic (2) the discrimination was severe or pervasive (3) the discrimination detrimentally affected the plaintiff (4) the discrimination would detrimentally affect a reasonable person in like circumstances and (5) the basis for employer liability is present.  Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006) (citations and footnotes omitted), overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  "The threshold for pervasiveness and regularity of discriminatory conduct is high," Greer v. Mondelez Glob., Inc., 590 F. App'x 170, 173 (3d Cir. 2014), and "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Shramban v. Aetna, 115 F. App'x 578, 580 (3d Cir. 2004) (citations and internal quotation marks omitted).

Defendant argues that Plaintiff's claim is insufficiently alleged because "[t]here are no allegations that Plaintiff was subjected to any offensive comments by his co-workers or supervisors, or that he was subjected to any other discriminatory conduct because of his race."  (Def.'s Mot. at 15).  Defendant further argues that Plaintiff's allegation that the Policy furthered an environment of racial "segregation and classification" is made "solely for inflammatory purposes" because Plaintiff has not alleged that he was kept "physically separated from his similarly situated white co-workers because of his race."  (Def.'s Reply at 6-7).

The Court disagrees.  The Amended Complaint contains several well-pleaded allegations which the Court must consider true, and which could allow the court to find the existence of a hostile work environment.  Most importantly, Plaintiff alleges that (1) he was consistently denied promotions for positions located on the "traditionally White/Caucasian campuses" (Compl. ¶¶ 22-32); (2) it was Plaintiff's daily requirement to "search, code, and log the Ethnicity/Race of

11

employees" in Defendant's database (Compl. ¶ 49); and (3) Defendant posted the Policy "visibly in the workplace, for all employees to see daily." (Pl.'s Opp'n at 16-17). These allegations are sufficient to raise an inference that Plaintiff was reasonably "detrimentally affected" by Defendant's "pervasive" discrimination.[4] Accordingly, Defendant's motion to dismiss Count Eight will be denied.

### ii. Individual Disparate Treatment (Count Ten)

Count Ten of Plaintiff's Amended Complaint alleges individual disparate treatment based on Defendant's failure to conduct performance evaluations. (Compl. ¶¶ 60-64). Again, to state a claim for individual disparate treatment, Plaintiff must allege that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action gives rise to an inference of discrimination. Patterson v. Del. River Port Auth. of Pa. & N.J.,15-cv-5405, 2016 WL 2744819, at *3 (E.D. Pa. May 9, 2016).

Defendant argues that there "are no allegations to support that Plaintiff suffered a material adverse employment action or was not promoted because of the lack of performance evaluations." (Def.'s Mot. at 17). In opposition, Plaintiff argues that he has adequately alleged that he suffered an adverse employment action because Defendant's failure to conduct performance evaluations led to an "actual economic loss" in that it hindered his ability to receive promotions. (Pl.'s Opp'n at 21).

---

[4] Plaintiff cites—and Defendant goes to lengths to distinguish—various cases where courts out of this Circuit have held that the plaintiff had adequately alleged hostile work environment claims. The Court acknowledges that, in particular, the circumstances present in Chaney v. Plainfield Healthcare Center, 612 F.3d 908 (7th Cir. 2010), were far more egregious that those present in the instant case, but that alone does not persuade the Court that Plaintiff's allegations are insufficient. This is not a case of "[s]imple teasing, offhand comments, and isolated incidents" that the Third Circuit has held must fail as a matter of law. Shramban v. Aetna, 115 F. App'x 578, 580 (3d Cir. 2004) (citations and internal quotation marks omitted).

Plaintiff alleges that the "adverse action" to which he has been subjected is Defendant's failure to evaluate him and resultant failure to promote him. (Pl.'s Opp'n at 18-21). Plaintiff correctly argues that Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc. is instructive to the extent that it shows that an employer's refusal to conduct performance evaluations of black employees may be strong evidence of employment discrimination. 10-cv-3695, 2011 WL 605699, at *2 (E.D. Pa. Feb. 16, 2011) (holding that the plaintiff had not stated a claim for racial discrimination because, *inter alia*, even though he alleged that black employees were refused performance evaluations, he failed to "identify the races of the individuals who determined whether or not to grant performance evaluations."). However, Plaintiff already has a cause of action for which he may introduce that type of evidence. Since Count Ten simply duplicates what has already been alleged in Plaintiff's failure to promote claim, it will be dismissed with prejudice.

### iii. **Retaliation (Count Eleven)**

In Count Eleven of the Amended Complaint, Plaintiff essentially alleges that Defendant retaliated against Plaintiff for his partner's decision to file an EEOC Charge by, *inter alia*, refusing to conform Plaintiff's work schedule to that of his partner. (Compl. ¶¶ 66-69).

To prove a claim of retaliation under 42 U.S.C. § 1981, a plaintiff must show "that (1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (citations and footnote omitted). To prove the first element of a retaliation claim, a plaintiff must take action to oppose some activity of the employer and "must hold an objectively reasonable belief, in good faith, that the activity [the plaintiff] oppose[s] is unlawful." Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006), as amended (Sept. 13, 2006).

13

To prove the second element, a plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. (internal citations omitted). The Third element requires the Plaintiff to show that "a reasonable jury could link" the alleged adverse employment action "to a retaliatory animus." Id.

Plaintiff's allegations are plainly insufficient to state a retaliation claim. First, and critically, Plaintiff does not allege that *he* took any action to oppose Defendant's activity, but rather than his "live-in partner filed an EEOC Charge against Defendant[]." (Compl. ¶ 66). Moreover, even if Plaintiff's partner's action could be imputed to Plaintiff, Plaintiff has failed to allege that Defendant's actions—which include "(1) the call to Cigna about Plaintiff [sic] and his partner's disability, (2) the so-called 'inquiry' to Plaintiff's partner, and (3) the subsequent refusal to modify Plaintiff's work hours to match his partner's hours"—produced harm that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. (Pl.'s Opp'n at 22); Moore, 461 F.3d at 341. Plaintiff does not allege that he was entitled to a modification of his work schedule, or that Defendant's refusal to modify his schedule otherwise harmed him. Cf. Seldon v. Nat'l R.R. Passenger Corp., 452 F. Supp. 2d 604, 609 (E.D. Pa. 2006) (holding defendant's denial of plaintiff's request for a specific shift satisfied the "adverse action" prong of his retaliation claim where plaintiff specifically alleged she was "entitled to" that shift "because of her seniority" and the "lost opportunity to earn additional income" harmed her). Accordingly, Count Eleven of the Amended Complaint will be dismissed with prejudice.

### B. Leave to Amend

In his proposed Third Amended Complaint, Plaintiff seeks leave to add the following claims:

- Discriminatory Assignment/Classification, in violation of 42 U.S.C. § 1981 (Count One)
- Individual Disparate Impact, in violation of Title VII (Count Two)
- Failure to Promote to Service Coordinator, in violation of Title VII (Count Five)
- Retaliation, in violation of Title VII (Count Thirteen)
- Sexual Orientation and Gender Discrimination, in violation of the PFPO (Counts Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-One and Twenty-Two)

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading by leave of court when justice so requires. The decision to permit an amendment rests in the sound discretion of the Court. See Heyl & Paterson Int'l Inc. v. F.D. Rich Hous. of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981). The United States Supreme Court has stated that leave to amend under Rule 15 may be denied in cases of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (stating that "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust").

### i. Futility

The Court may deny leave to amend if the amendment would be futile. Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 259 (3d Cir. 2014). "Futility" means that a proposed amendment to a pleading fails to state a claim upon which relief could be granted. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

For the reasons outlined above, *supra* V.A.iv, it would be futile to permit Plaintiff to bring a new claim for individual disparate treatment based on "Discriminatory Assignment/Classification." Plaintiff has not alleged that he suffered an adverse employment action other than the failure to promote him, and failure to promote is already the basis of a cause of action in Plaintiff's Amended Complaint.

Permitting Plaintiff to add a claim for individual disparate impact would also be futile. First, Plaintiff has failed to exhaust his administrative remedies with respect to that claim, as his EEOC Charge—the prerequisite to stating a claim under Title VII—does not allege individual disparate impact. (See 12/30/15 Charge; 3/16/16 Charge); 42 U.S.C. § 2000e. Moreover, Plaintiff has failed to state a claim for individual disparate impact. To state a claim for individual disparate impact, Plaintiff must plead that a facially neutral practice adversely affected one group disproportionately. See Powell v. Ridge, 189 F.3d 387, 394 (3d Cir. 1999). Plainly, "[a]n adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact[;]" the claim cannot be stated "absent statistical proof." Massarsky v. Gen. Motors Corp., 706 F.2d 111, 121 (3d Cir. 1983). Plaintiff has pointed to no specific or statistical allegations in support of this claim, so it fails as a matter of law.

Permitting Plaintiff to amend to add another claim for failure to promote would be similarly futile since, as explained above, *supra* V.A.ii, all alleged instances of failure to promote asserted in the Amended Complaint will be consolidated into Count Three as a single cause of action. The Court acknowledges that, in the proposed Third Amended Complaint, Plaintiff has alleged for the first time a number of comparators for the position of Service Coordinator. (ECF 28, Ex. 1, ¶ 35). While this does not warrant the addition of a new cause of action, Plaintiff may be permitted at trial to present evidence of these comparators to support his single failure to promote claim. See McSparran v. Pennsylvania, 13-cv-1932, 2014 WL 1371594, at *8 (M.D. Pa. April 8, 2014) (Comparator evidence is a way a plaintiff can satisfy the fourth element of the *prima facie* case).

Permitting Plaintiff to add a claim for retaliation under Title VII would also be futile because the Court has already found that Plaintiff failed to state a claim for retaliation under 42

16

U.S.C. § 1981, and the same standard applies to retaliation claims brought under both Title VII and Section 1981. See Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 n.14 (3d Cir. 2010).

### ii. Undue Delay

With regard to "undue delay," the Third Circuit has advised courts to consider "whether new information came to light or was available earlier to the moving party." In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 280 (3d Cir. 2004); see also Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (stating that "the question of undue delay requires that we focus on the movant's reasons for not amending sooner"); Lindquist v. Buckingham Twp., 03-cv-2971, 2004 WL 1598735, *6 (3d Cir. July 19, 2004) (unpublished) (affirming denial of leave to amend complaint to include equal protection claim in light of finding that the documents that the amending party alleged were withheld, and which gave rise to amended claim, were public and delay was, therefore, inexcusable).

Plaintiff's proposed Third Amended Complaint alleges eight new counts of sexual orientation and gender discrimination under the PFPO. (Pl.'s Mot. ¶¶ 84-141). Like Title VII, the PFPO has an exhaustion requirement which, as Plaintiff's counsel's affidavits demonstrate, Plaintiff has satisfied. (ECF 39, Ex. A). The fact that Plaintiff has exhausted his administrative remedies, however, confirms that these new claims are not based on "new information [that] came to light," and makes it all the more perplexing why he did not allege this theory of liability in any of his three previously-filed complaints. At a hearing on October 6, 2016, Plaintiff's counsel indicated to the Court that it had not previously pursued this theory of liability in an effort not to "burden" the Court. The Court is not persuaded by this excuse, particularly given that Plaintiff's submissions to this Court have been both voluminous and duplicative. See In re

Adams Golf, Inc. Sec. Litig., 381 F.3d at 280 (holding District Court did not err in denying leave to amend where plaintiffs "could have introduced the allegations in the motion to amend long before the Court granted the motion to dismiss," and noting that it "d[id] not credit" the plaintiff's excuse for not doing so); Boretsky v. Corzine, 08-cv-2265 GEB, 2011 WL 2610370, at *2 n.3 (D.N.J. June 30, 2011) (holding that "[i]t is not appropriate to raise new claims [in a third amended complaint] and, in light of the fact that this Court had granted Plaintiff previous opportunities to amend the Complaint, this Court will not consider these claims at this late juncture."). Accordingly, the Court denies Plaintiff leave to add claims based on theories of sexual orientation and gender discrimination due to his undue delay in bringing them.

### VI.     Conclusion

For the reasons stated herein, Defendant's partial motion to dismiss will be **GRANTED** with prejudice with respect to Counts One, Two, Six, Ten, Eleven and Twelve; **GRANTED** without prejudice—because they will be subsumed into Count Three—with respect to Counts Five, Seven and Nine; and **DENIED** with respect to Count Eight. The Court dismisses Count Four without prejudice *sua sponte*, as it is duplicative. Additionally, Plaintiff's motion for leave to amend the Amended Complaint will be **DENIED** in its entirety. Accordingly, this case will proceed only on Counts Three and Eight of the Amended Complaint.

An appropriate Order follows.

O:\Jessica.2016\16-cv-2894 Sims v. Elwyn\Memo Re D Motion to Dismiss & P Motion to Amend.docx